IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHANICQUA SUBER-APONTE,**<br>Plaintiff,<br><br>v.<br><br>**BOROUGH OF POTTSTOWN, MARK FLANDERS, JAMES YOST, CHARLES WELLER, RICHARD DRUMHELLER,**<br>Defendants. | CIVIL ACTION<br><br><br><br>NO. 15-1314 |

## MEMORANDUM

Plaintiff Shanicqua Suber-Aponte has asserted several constitutional, statutory, and state-common-law tort claims against the Borough of Pottstown (the "Borough"), Pottstown Borough Manager Mark Flanders ("Flanders"), Pottstown Police Officer James Yost ("Yost"), Pottstown code officer Charles Weller ("Weller"), and Pottstown Police Chief Richard Drumheller ("Drumheller").[1]  Defendants have filed a motion to dismiss all of Plaintiff's claims.[2]  That motion shall be granted in part and denied in part.

### I.  BACKGROUND

As the Court writes only for the parties, this background concerns only the facts asserted by Plaintiff that are necessary to resolve the current motion.  Although neither the SAC nor the TAC is a model of clarity, the Court has endeavored to identify all potential claims against Defendants that can be gleaned from the language of the pleadings.

---

[1] Plaintiff initially named her landlord, William Heuer ("Heuer") as a Defendant, but later voluntarily dismissed the claims against him.  *See* ECF No. 62.

[2] Although Plaintiff has filed a Third Amended Complaint ("TAC"), that document explicitly incorporates her Second Amended Complaint ("SAC").  Accordingly, in their motion to dismiss the TAC, Defendants incorporated their motion to dismiss the SAC.  The Court shall therefore consider all claims that appear in either the SAC or the TAC, and will construe Defendants' current motion as seeking to dismiss all such claims.

1

**A. Allegations Against Yost**

Plaintiff's claims against Yost arise from two separate incidents at Plaintiff's home. The first occurred on November 23, 2013 after Plaintiff, who is African-American, called the police to report a trespasser. When Yost responded to the call, Plaintiff alleges that he directed racial slurs at her. He then allegedly refused to take any action against the Caucasian trespasser, and told Plaintiff to "shut up" and go inside her home. When Plaintiff objected to these instructions, Yost allegedly threatened Plaintiff with a disorderly conduct charge; told her "if you people don't like it just move"; and reiterated that he would not be arresting the trespasser, but told plaintiff, "if you keep it up you will be arrested." Plaintiff asserts that Yost then ran her name for arrests and warrants, but did not conduct a similar check on any other persons present at the time, and that he told Plaintiff to stop speaking on the phone with a friend to whom she was describing Yost's conduct. SAC at 2.

The second incident between Yost and Plaintiff occurred on August 19, 2014, when Yost responded to a call by Plaintiff's landlord, William Heuer ("Heuer"), who claimed that Plaintiff would not allow him to enter the residence. Plaintiff alleges that Yost again directed racial slurs at her when he arrived. After Plaintiff attempted to explain that Heuer had, in fact, been permitted to enter, Plaintiff alleges that Yost again told her to "shut up" and go inside the residence. Plaintiff claims that Heuer, who is Caucasian, admitted to Yost that he had been allowed inside, but that Yost nonetheless wrote a police report stating that Plaintiff was causing a disturbance, which caused her to lose her housing assistance from the housing authority. Based on these factual allegations, Plaintiff has asserted claims against Yost under 18 U.S.C. §§ 241, 242, and 245 (criminal civil rights statutes), 18 U.S.C. § 1001 (criminal fraud statute), 42 U.S.C. § 3789d(c) (the anti-discrimination provision of the Safe Streets Act), and 42 U.S.C. § 14141

(provision allowing the Attorney General to file civil suits to obtain relief for deprivation of rights within the juvenile justice system), as well as a constitutional claim under 42 U.S.C. § 1983 alleging "deprivation of rights," and a claim for intentional infliction of emotional distress (IIED). SAC at 2.

### B. Allegations Against Drumheller

Plaintiff reported Yost's racial slurs and other conduct to Drumheller on numerous occasions, and also complained that Yost's report regarding the August 19, 2014 altercation had impacted her housing situation. She alleges that Drumheller refused to look into her complaints, and eventually told her to never call the police department again. Arising from these factual allegations, she has alleged claims under 18 U.S.C. §§ 241 and 242, 42 U.S.C. § 14141, 42 U.S.C. § 3789d(c), as well as a claim under 42 U.S.C. § 1983 alleging a failure to intervene in the violation of her constitutional rights (which rights she does not identify with specificity), and a claim for IIED. SAC at 1-2.

### C. Allegations Against Weller

Plaintiff alleges that Weller falsified inspection documents, which allowed rental of the property that Heuer leased to Plaintiff, despite knowing that Heuer had not corrected code violations that Weller had previously identified and ordered Heuer to fix. When Plaintiff complained to Weller about the allegedly improper inspection approval, Weller allegedly responded that "it is what [it] is and if you don't like it then sue the Borough." Based on these factual allegations, Plaintiff has alleged a violation of her Fourteenth Amendment rights (which shall be construed as a claim under 42 U.S.C. § 1983), as well as a claim for IIED. SAC at 2-3.

### D. Allegations Against Flanders

Plaintiff alleges that Flanders has done nothing to address her complaints about Yost's alleged conduct, Weller's alleged conduct, and the ongoing damage that Plaintiff experienced as a result of Yost's police report and Heuer's refusal to fix her property. She further asserts that her phone calls and e-mails to the Borough are constantly ignored, which she alleges is retaliation for her speaking out against the Borough at public meetings. Based on these factual allegations against Flanders, she has asserted a First Amendment retaliation claim and a Fourteenth Amendment claim (which shall be construed as claims under 42 U.S.C. § 1983), a claim under 42 U.S.C. § 1983 for failing to intervene in a violation of Plaintiff's constitutional rights (which rights she does not identify with specificity), claims under 18 U.S.C. § 1001 and 42 U.S.C. 3789d(c), and a claim for IIED. SAC at 3.

### E. Allegations Against the Borough

Plaintiff has alleged that she and her son have sustained physical injuries from faulty windows, a hole in the floor, fleas, a leaking roof and sink, and severe mold in her residence. Plaintiff has asserted a claim against the Borough for negligence and a violation of her Ninth Amendment rights, based on the Borough allowing Heuer to rent the unit to her. SAC at 3-4.

In the process of gathering evidence for her landlord-tenant dispute with Heuer in 2015, Plaintiff requested documents from the Borough concerning its inspection of Heuer's properties. The Borough denied these Right-to-Know (RTK) requests in June 2015. Initially, the Borough claimed that the reason for denial was that the records were part of an ongoing criminal or non-criminal investigation. The following week, the Borough reiterated its denial of Plaintiff's requests and added a new justification: Plaintiff's lawsuit against the Borough in federal court. Later the same day, after Plaintiff complained that this new reason violated her civil rights, the

Borough "clarified" its position and noted that the ongoing federal litigation would not preclude any further RTK requests – although the existing requests remained denied. In all, Plaintiff received at least four letters from the Borough regarding the denial of her requests. Plaintiff alleges that the Borough has granted similar RTK requests by Heuer. Plaintiff appealed the denial to the Pennsylvania Office of Open Records ("OOR"), which granted Plaintiff's appeal and found that the Borough had produced "no evidence" to support its denial of Plaintiff's requests. Plaintiff alleges that the Borough's denial of her RTK requests was in retaliation for her repeated public grievances against the Borough, and she has asserted a First Amendment retaliation claim against the Borough based on this allegation. TAC at 2-3.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (internal quotation marks and brackets omitted). A plaintiff need not show that success on his or her claims is probable, but must assert "'enough facts to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element in a claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). However, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The question is not whether the claimant "will ultimately

prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks and citations omitted).

In considering a plaintiff's claims, the Court must construe the facts alleged in the Complaint drawing all reasonable inferences in the light most favorable to the plaintiff. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014). In doing so, the Court may look to documents that are attached to the complaint and on which a plaintiff relies to determine if the documents support or contradict the legal or factual claims in the complaint. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999).

### III. DISCUSSION

#### A. Federal Statutory Claims

Plaintiff has asserted claims under several federal criminal statutes: 18 U.S.C. §§ 241, 242, 245, and 1001. None of these statutes provide for a private right of action, and Defendants' motion to dismiss these claims shall be granted. *See Mathis v. Phila. Elec. Co.*, 644 F. App'x 113, 116 (3d Cir. 2016) ("[T]he District Court properly determined that the criminal statutes that Mathis invoked [including 18 U.S.C. § 1001] do not create a private right of action."); *Chaney v. Races and Aces*, 590 F. App'x 327, 330 (3d Cir. 2014) ("Sections 241 and 242 are criminal statutes that 'do not provide for a private right of action.'") (quoting *Ali v. Shabazz*, 8 F.3d 22, 22 (5th Cir. 1993)); *Barr v. Camelot Forest Conservation Ass'n*, 153 F. App'x 860, 862 (3d Cir. 2005) (affirming dismissal of claims under 18 U.S.C. § 245 because such claims were based on "criminal offenses for which there is no civil remedy").

Additionally, Plaintiff has asserted claims under the Omnibus Crime Control and Safe Streets Act of 1968 (the "Safe Streets Act"), 42 U.S.C. § 3789d(c), which prohibits

6

discrimination in the allocation of benefits, participation, and employment by any program funded by certain Department of Justice grants authorized by the Act. *See Sims v. Montgomery Cnty. Comm'n*, 873 F. Supp. 585, 608 (N.D. Ala. 1994). Since Plaintiff has not identified any program funded by the Safe Streets Act connected to the discrimination she has alleged, there is no plausible basis for claims under this statute and these claims shall be dismissed.

Finally, Plaintiff has asserted claims under 42 U.S.C. § 14141, which allows the Attorney General of the United States to initiate a civil action to remediate violations of constitutional rights within the juvenile justice system. Since the statute specifically provides that "[a] claim under 42 U.S.C. § 14141 may only be brought by 'the Attorney General, for or in the name of the United States,'" Suber-Aponte is not a proper plaintiff for a claim under this provision. *Chaney*, 590 F. App'x at 330, and these claims must be dismissed.

Since the criminal statutes do not create a private right of action, Plaintiff does not assert discrimination in relation to a program funded by the Safe Streets Act, and only the Attorney General may assert a claim under 42 U.S.C. § 14141, amendment of the claims under these statutes would be futile, and these claims shall be dismissed with prejudice.

### B. Constitutional Claims under 42 U.S.C. § 1983

I turn now to the claims that Plaintiff has asserted under 42 U.S.C. § 1983 alleging that Defendants violated several of her constitutional rights.

#### 1. Fourteenth Amendment Due Process (Weller and Flanders)

Plaintiff has asserted Fourteenth Amendment Due Process claims against Weller and Flanders arising from their alleged failure to enforce the housing code against Heuer, which Plaintiff states deprived her of either her property right in the residence or the protection of the Borough's housing laws. However, as the Supreme Court noted in *DeShaney v. Winnebago*

*County Department of Social Services*, the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. 189, 196 (1989). Thus, Weller and Flanders had no constitutional obligation to intervene in Heuer's alleged failure to provide a habitable environment or to enforce the Borough's housing code to protect Plaintiff from substandard living conditions. Plaintiff's Due Process claims against Weller and Flanders must therefore be dismissed. Since the alleged condition of Plaintiff's housing was caused by Heuer, and not by the Borough or its employees, any amendment to this claim would be futile in light of *DeShaney*, and this claim shall be dismissed with prejudice.

### 2. Fourteenth Amendment Equal Protection (Yost)

Plaintiff has asserted a section 1983 claim against Yost asserting "deprivation of rights." Although Plaintiff does not specify which right Yost allegedly violated and Defendants' motion to dismiss does not specifically address the constitutional claim against Yost, the factual assertions against Yost describe an allegation of racial profiling. While Defendants do not specifically respond to the constitutional claim against Yost, their motion contains an argument that all of the individual Defendants, including Yost, are entitled to qualified immunity with respect to the constitutional claims against them. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). A qualified immunity analysis thus consists of two questions, which may be addressed in either order: (1) Whether plaintiff has presented facts that would establish that a defendant's conduct has violated a constitutional right; and (2) "whether that right was 'clearly

8

established' at the time of the challenged conduct." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014).

Turning first to whether Plaintiff has pled facts which establish a constitutional violation, to state a racial profiling claim under the Equal Protection Clause, a plaintiff must show that an officer's actions "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). To show discriminatory purpose, a plaintiff must provide facts to show that "she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." *Id.* at 206.

Plaintiff is African-American and has alleged that when Yost came to her residence in response to her call regarding a trespasser on November 23, 2013, he treated her differently than the similarly situated Caucasian bystanders present at the time – including the alleged trespasser about whom Plaintiff had contacted the police. Taken as a whole, Plaintiff's allegations that Yost directed racial slurs at her; threatened to arrest her, but not the Caucasian alleged trespasser; told her that "*you people* . . . should just move"; and checked Plaintiff, but not any of the Caucasian persons present, for arrests or warrants are sufficient to plausibly support the allegation that Yost treated Plaintiff differently than other similarly situated individuals based on her race.

Since Plaintiff has pled facts that, if true, would plausibly support a constitutional violation, it is necessary to determine if the right at issue here was clearly established at the time the alleged violation occurred. Clearly established rights are those which are sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S. Ct. at 2093 (internal quotations omitted). Put another way, an official

9

violates a clearly established right when "the unlawfulness of the action is apparent in light of pre-existing law." *Dougherty*, 772 F.3d at 993.

The right to be free from intentional discrimination based on race was clearly established when Yost's actions occurred. Even if it were unclear in the Third Circuit prior to *Bradley*, that decision established that the Equal Protection Clause is violated when an officer intentionally treats a member of a protected class differently than a similarly situated member of an unprotected class. *Bradley*, 299 F.3d at 206. Race has long been established as a protected class under the Equal Protection Clause. *See id.* Thus, by 2013, when the first incident occurred, a reasonable police officer would have understood that it was unconstitutional to intentionally treat Plaintiff more harshly based on her race. Since Plaintiff has alleged facts which plausibly support her allegations that Yost violated her constitutional rights, and the right to be free from intentionally discriminatory treatment by an officer based on race was clearly established at the time the alleged conduct occurred, Yost is not entitled to qualified immunity based on the facts presented in the SAC and TAC, and Defendants' motion to dismiss shall be denied with respect Plaintiff's section 1983 claim against Yost.

### 3. Failure to Intervene

Plaintiff has alleged claims under 42 U.S.C. § 1983 against Drumheller and Flanders asserting that they failed to intervene in constitutional violations by other officials. The Third Circuit has held that a failure-to-intervene claim may arise when an officer, "whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place *in his presence*." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (emphasis added). The Third Circuit has emphasized that "an officer is liable only if there is a realistic and reasonable opportunity to intervene." *Id.*

### a. Drumheller

The failure-to-intervene claim against Drumheller arises from his alleged failure to look into Plaintiff's complaints about Yost's alleged racial slurs and racial profiling. But there is no allegation that any of Yost's alleged violations of Plaintiff's constitutional rights occurred in Drumheller's presence, and Plaintiff's assertion that Drumheller ignored her complaints after the fact does not demonstrate that Drumheller had a "realistic and reasonable opportunity" to intervene in Yost's alleged violation of Plaintiff's rights. Defendants' motion to dismiss shall therefore be granted with respect to the failure-to-intervene claim against Drumheller.

### b. Flanders

Similarly, Plaintiff's failure-to-intervene claim against Flanders – which arises from Flanders's alleged ignoring of Plaintiff's grievances concerning police discrimination, housing code violations, false police reports, and negligence on the part of the Borough – is unsustainable. As noted above, however, a failure-to-intervene claim requires that the Defendant had "a realistic and reasonable opportunity to *intervene*." *Smith*, 293 F.3d at 651 (emphasis added). Failure to take affirmative steps in response to grievances about past conduct is not the same as failure to intervene in an immediate constitutional violation, and Plaintiff's allegations against Flanders therefore do not support a failure-to-intervene claim. Additionally, as discussed above, Weller's alleged failure to enforce the housing code against Heuer was not a constitutional violation in the first place, so it cannot give rise to a constitutional duty to intervene. Defendants' motion to dismiss shall therefore be granted with respect to the failure-to-intervene claim against Flanders.

Since Plaintiff has had four opportunities to state her claims, and the facts asserted in the SAC establish that neither Drumheller nor Flanders had a realistic opportunity to intervene as the

alleged constitutional violations occurred, amendment of Plaintiff's failure-to-intervene claims would be futile, and these claims shall be dismissed with prejudice.

### 4. First Amendment Retaliation

Plaintiff has asserted First Amendment retaliation claims against Flanders and the Borough. To plead a First Amendment retaliation claim, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). The Third Circuit has held that speaking out against local government officials, "even if concerned with private grievances, is entitled to First Amendment protection." *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 284 (3d Cir. 2004).

#### a. The Borough

Plaintiff has asserted that the Borough retaliated against her for speaking at the borough council meetings by denying her Right to Know ("RTK") requests for information about the Borough's inspection of Heuer's properties.

In light of *Eichenlaub*, Plaintiff's speech at numerous public council meetings about the Borough's code enforcement is protected speech, regardless of whether the grievances are considered matters of public concern or concerned only Suber-Aponte. She has thus satisfied the first element of a First Amendment retaliation claim against the Borough. The Borough argues that she has not met the second element because she ultimately was able to obtain the documents she requested after she successfully appealed to the Pennsylvania Office of Open Records ("OOR"). But for the time-sensitive purpose that Plaintiff sought the documents – to fight eviction by her landlord – the several-month delay created by the OOR appeal process could be

viewed as a sufficiently harsh consequence to deter a person of ordinary firmness from exercising her constitutional rights. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (holding that the impact of a retaliatory action "need not be great in order to be actionable, but it must be more than *de minimis*") (internal quotation marks omitted). Finally, Defendants argue that Plaintiff cannot show a causal relationship between her protected activity and the alleged retaliation because their letters denying her requests cite lawful reasons for the denials. But given that the OOR found "no evidence" to support the Borough's cited justifications for denying the requests, and that the Borough sent Plaintiff various letters changing its justification for the denial at least twice (including at least one plainly improper justification which the Borough "clarified" within hours), it would be plausible to infer that the Borough's actual reason for denying Plaintiff's request was retaliation for her frequent public critiques of the Borough and its officials. Since Plaintiff has pled facts to plausibly support all three elements of her First Amendment retaliation claim against the Borough, Defendants' motion to dismiss that claim shall be denied.

### b. Flanders

Plaintiff's First Amendment retaliation claim against Flanders is based on his alleged failure to respond to her complaints about Yost's and Weller's conduct. Setting aside whether the failure to respond to these complaints is a sufficiently harsh action to constitute First Amendment retaliation, Plaintiff has asserted no facts in the SAC or TAC which connect her protected activity to the alleged retaliation. She has alleged only that Flanders heard her complaints and did not act to correct the violations. Any causal link between her protected activity and the alleged failure to enforce the housing code is speculative in that neither the SAC nor the TAC contain any facts "suggestive of the proscribed conduct." *Great W. Mining*, 615 F.

3d at 177.  Accordingly, Defendants' motion to dismiss the First Amendment retaliation claim against Flanders shall be granted.

### 5. Ninth Amendment

Plaintiff has alleged that "[t]he borough as a whole is also in violation of Ninth Amendment Right. [sic]"  SAC at 4.  While the factual predicate of this claim is unclear, the claim cannot not survive because "the Ninth Amendment does not independently provide a source of individual constitutional rights."  *Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009).  Defendants' motion to dismiss Plaintiff's Ninth Amendment claim shall be granted, and, since the Ninth Amendment does not provide for an independent source of constitutional rights, the claim will be dismissed with prejudice because amendment would be futile.

### C.  Intentional Infliction of Emotion Distress (IIED)

A claim for intentional infliction of emotional distress (IIED) seeks to impose liability on a defendant "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."  *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46(1) (1965)).  The claim requires an allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* (internal quotation marks omitted).  Defendants have argued that an IIED claim requires physical injury, but this argument is misplaced: the physical injury requirement applies only to IIED claims based on the emotional effects of harm to third parties (*i.e.*, a claim by the bystander to an extreme injury).  *See* Restatement (Second) of Torts § 46(2) (1965).  When a defendant's actions are directed at a plaintiff herself, an IIED claim does not require physical injury; rather, proof of

severe emotional distress suffices to meet the injury component of the claim. *See Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). However, while physical injury is not required, the Pennsylvania Supreme Court has emphasized that IIED claims arise only from "the most clearly desperate and ultra extreme conduct," such as burying a car accident victim's body in an abandoned field (instead of notifying authorities or seeking medical assistance), intentionally framing a plaintiff for homicide, or intentionally releasing false information that a famous plaintiff was suffering from a fatal disease. *Id.* at 152. In the context of employment, courts applying Pennsylvania law have acknowledged IIED claims when severe harassment was combined with harsh retaliation for refusing sexual advances. *See Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988) (recognizing claim for IIED in which employer repeatedly harassed employee, withheld information she needed to perform her job, forbade her from talking to co-workers or answering the phone, and followed her throughout the workplace).

### 1. Yost

Plaintiff's IIED claim against Yost arises from her allegation that Yost directed racial slurs against her, harassed her, threatened her with arrest without cause, and filed a knowingly false police report that caused her to lose her housing assistance. Taken as true, these allegations could plausibly support an inference that Yost acted with the intent to cause emotional harm to Plaintiff and that his actions were sufficiently outrageous to meet the standard for an IIED claim. Accordingly, Defendants' motion to dismiss Plaintiff's IIED claim against Yost shall be denied.

### 2. Drumheller

Plaintiff's IIED claim against Drumheller arises from her allegation that he did not take action in response to Plaintiff's complaints about Yost's conduct. Inaction in response to a complaint is not the type of "desperate and ultra extreme conduct" necessary to support an IIED

claim, nor has Plaintiff provided any facts to suggest that Drumheller intended to cause severe emotional distress to Plaintiff. Therefore, Defendants' motion to dismiss the IIED claim against Drumheller shall be granted.

### 3. Flanders

Plaintiff's IIED claim against Flanders concerns his inaction in response to her complaints about enforcement of the housing code. As with the claim against Drumheller, this type of inaction in response to complaints is not the type of extreme conduct that courts have found to support an IIED claim. Accordingly, Defendants' motion to dismiss shall be granted with respect to the IIED claim against Flanders.

### 4. Weller

Plaintiff's IIED claim against Weller concerns Weller's alleged failure to enforce the housing code against Heuer. Although this behavior was not as passive as Drumheller's or Flanders's, it also does not raise to the level of outrageousness required to support an IIED claim. Furthermore, there are no facts to suggest that Weller's alleged failure to enforce the code against Heuer was directed at Plaintiff, let alone was motivated by an intent to cause Plaintiff emotional harm. Plaintiff has thus failed to provide factual support for her IIED claim against Weller, and Defendants' motion to dismiss that claim shall be granted.

Given the limited scope of IIED as a cause of action in Pennsylvania and the fact that Plaintiff's most recent amended complaint contains no additional facts regarding her IIED claims, the Court finds that amendment of the IIED claims against Drumheller, Flanders, and Weller would be futile, and these claims will be dismissed with prejudice.

### D. Negligence

Plaintiff has asserted a claim for negligence against the Borough arising from injuries she sustained from faulty windows, a hole in the floor, mold, fleas, and roof leaks in her residence. However, a local government in Pennsylvania is immune from negligence claims except to the extent those claims fall within any of the statutory exceptions set forth in 42 Pa. Cons. Stat. § 8542. The only exception relevant to torts involving real property provides that a local government is liable only for negligence in relation to property that is in "the care, custody, or control" of the government. 42 Pa. Cons. Stat. § 8542(b)(3). Since Plaintiff has pled that Heuer was her landlord and neither the SAC nor the TAC contain any facts suggesting that the Borough had care, custody, or control of the property, this exception does not apply and the Borough is immune from any claims for negligence regarding the residence. Defendants' motion to dismiss this claim shall be granted, and, in light of the Borough's immunity, amendment of this claim would be futile so it shall be dismissed with prejudice.

An order follows.


**Dated**: September 23, 2016

                                              **BY THE COURT:**

                                              **/S/WENDY BEETLESTONE, J.**

                                              _____

                                              **WENDY BEETLESTONE, J.**